# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | CRIMINAL NO. H-20-047 |
| CALEB KIRK YATES, <br> Defendant | § § § | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

To the HONORABLE JUDGE MILLER:

Now comes the United States of America, by and through Jennifer Lowery, Acting United States Attorney for the Southern District of Texas and John M. Lewis, Assistant United States Attorney, in the above-entitled numbered criminal action, and files its response to Defendant's Motion to Suppress Evidence (Dkt. 32). For the following reasons, the motion should be denied in its entirety.

## I. BACKGROUND

On or about April 09, 2019, the United States Customs and Border and Protection (CBP) identified a parcel in Virginia that was suspected to contain an "auto switch" devices. The parcel had been shipped from China and was labeled as a "spray paint valve". The parcel was addressed to the Defendant at 400 Thomas Castleberry Road, Shepherd, Texas 77371. The parcel was initially targeted based on prior interceptions and examinations of parcels that resulted in the recovery of "auto switch" devices. An "auto switch" device is a part that is used to convert a semi-automatic pistol to fire in full-automatic mode. A fully automatic pistol is considered a machinegun under 26 U.S.C. § 5845(b). The possession of both an "auto

switch" device or a machinegun are prohibited by law under 18 U.S.C. § 922(o)(1) and 26 U.S.C. § 5845(b).

The parcel was inspected by CBP and found to contain one metal part, gold in color with the "Glock" (a firearms manufacturer) logo displayed on it. The item was determined to be an "auto switch" device by CBP. The parcel and its' contents appeared as is depicted below. (Government Exhibit 3).



Homeland Security Investigations (HSI) Special Agent Jesse Lopez was contacted by CBP and informed about the aforementioned seizure. Agent Lopez informed CBP that HSI Houston would accept the parc-el for an attempted controlled delivery. The parcel was shipped to HSI Houston and on May 10, 2019, Agent Lopez received the and confirmed that the metal

2

part inside was an "auto switch" device. In doing so, Agent Lopez worked in conjunction with a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

Records checks for 400 Thomas Castleberry Road, Shepherd, Texas 77371, were conducted, which indicated that the Defendant was a listed resident. A criminal history record check of the Defendant yielded results that he is a convicted felon who was convicted of the offense of Possession of a Controlled Substance on August 12, 2008 and confined to two years imprisonment with the Texas Department of Criminal Justice. As such, the Defendant was prohibited by federal law from possessing any firearms or ammunition.

Based on the contents of the parcel being identified as a prohibited "auto switch" device, on the parcel being addressed to the Defendant, on the Defendant being a listed resident of the address designated for shipment, and on the Defendant's status of a convicted felon, Agent Lopez began work on an anticipatory search warrant. The warrant, generally, requested the authority to search the premises of the Defendant's address once the package was received. Agent Lopez obtained authorization from United States Magistrate Judge Nancy K. Johnson on May 21, 2019 for an anticipatory search warrant (Government Exhibit 1) to conduct a search of the Defendant's address, pursuant to the terms of the warrant.

On May 23, 2019, federal agents conducted a controlled delivery of the above-described parcel to the Defendant at 400 Thomas Castleberry Road, Shepherd, Texas 77371. During that controlled delivery, the Defendant took possession of the parcel and opened it. On the same day, pursuant to the above-referenced search warrant, federal agents conducted a search of 400 Thomas Castleberry Road, Shepherd, Texas 77371 which resulted in the seizure of the above described parcel that had contained the above-referenced "auto switch" device, 12 firearms (including one firearm with a machine gun "auto switch" already attached), nearly

3,000 rounds of ammunition, assorted firearm components (including magazines), approximately 12 grams of psilocin, approximately $50,000 in counterfeit United States currency, two computers, one cellular phone, two digital storage cards and a hawk, amongst other items.

An additional search warrant was executed on August 14, 2019 for the search of the Defendant's computers, cellular phone and digital storage cards. On January 22, 2020, the Defendant was charged in a two-count indictment with the offenses of felon in possession of a firearm and possession of a machinegun.

## II. DISCUSSION

**The May 21, 2019 search warrant affidavit established probable cause because the Affiant had the requisite knowledge to establish a fair probability the parcel contained an "auto switch" device, which was illegal for the Defendant to possess and also served as probable cause of additional crimes he was committing**

*Probable Cause for a Search Warrant*

"To determine whether probable cause exists for the issuance of a search warrant, the district court is to make a common sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Wylie*, 919 F.2d 969 (5th Cir.1990). Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place". *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317. To determine whether probable cause exists to authorize a search, a magistrate "is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Peden*, 891 F.2d 514 (5th Cir.1989).

4

*As Applied to Facts in this Case*

In the instant case, when requesting a warrant to search the Defendant's residence and surround premises, Agent Lopez (the Affiant) informed the Magistrate Judge of the following facts in his affidavit (Government Exhibit 1):

- A seized parcel was suspected to contain an illegal "auto switch" device and that parcel was searched by CBP.
- The parcel was addressed to the Defendant and destined for his home address, which is located entirely within the Southern District of Texas.
- CBP determined that the item in the parcel was indeed an illegal "auto switch" device.
- Agent Lopez was sent the parcel by CBP in order to further an investigation.
- Agent Lopez, utilizing his training and experience (set forth in paragraphs 2 and 3 of the affidavit), identified the item inside of the parcel as an illegal "auto switch" device.
- The Defendant is a convicted felon and thus legally prohibited from possessing any firearms or ammunition.
- Agent Lopez and other law enforcement officials planned to allow a controlled delivery to the Defendant at the listed address to verify that the Defendant himself would indeed take possession of the "auto switch" device.
- A photograph of the parcel and the "auto switch" device was included in the affidavit.

In paragraph 3 of the affidavit, Agent Lopez outlines where the information he is providing for the affidavit is coming from. In paragraph 4 Agent Lopez identified the federal statutes that he believed his affidavit established probable cause to believe the Defendant would be in violation of. Furthermore, in paragraph 6 Agent Lopez provided the Magistrate Judge with a description of what an "auto switch" device was and how it could be utilized to

convert a handgun into a fully automatic weapon. See Government Exhibit 1.

The facts above coupled with the agent's knowledge clearly establish that once the parcel was delivered to the Defendant, a fair probability existed that he would be in violation of one or more federal laws as laid out in paragraph 4 of the affidavit. The affidavit clearly sets out a common-sense belief that probable cause had been established.

*Agent's Ability to Recognize Item as "Auto Switch"*

The Defendant argues that probable cause was not established and that suppression is the appropriate remedy. His argument is that the affidavit is lacking due to "Identification of Machine-Gun Parts Requires Specialization, Affiant's Conclusions are Not Based on Verifiable Science, Testing of Object is Unreliable in this Case, and Criminality of Item is Not Readily Apparent". The Defendant's argument can be summed up as follows: before probable cause could be established in this case, Agent Lopez needed to rely on an expert examination of the "auto switch" device in order to believe it was what it appeared to be. In attempting to further his argument, the Defendant cites numerous points of well-established authority that describe when testimony should and should not be allowed in front of a jury in a field of expertise.

The Defendant's argument and authority is misplaced. An expert opinion is not required for the purposes of establishing probable cause for a search warrant. The standard for probable cause, as set forth herein, does not rely on the ultimate truth of a particular fact at issue – it only requires that it there is a fair probability that criminality is afoot. The Defendant does not include a single citation of authority establishing that an expert opinion is required in order to meet the standard of probable cause. His argument here is tantamount to holding that a law enforcement officer could never establish probable cause by observing a white powdery

6

substance in certain situations, only because he would be unable to swear to the court as an expert that the substance was indeed determined to be cocaine. This reasoning fails in jurisdictions across the United States every single day.

The Defendant also fails produce any authority that indicates a court has determined that visually identifying an "auto switch" device is a field of expertise under *Daubert*. As the Court is aware, federal agents and law enforcement officers are well-trained in the use, disassembly and cleaning of various firearms and often possess detailed knowledge of parts that can be added to or removed from firearms to alter functionality. Agents and officers routinely receive training and various bulletins regarding changes in firearms and firearms parts, such as Defendant's Exhibit 2 (provided to the Defendant by the Government during discovery), the contents of which Agent Lopez was aware of. The Defendant's comparison of an agent or officer's visual examination of a firearm part to the well-established scientific analysis of microscopic toolmarks used when comparing bullets or casings from a firearm is flawed.

The Defendant refers to ATF Technical Bulletin 17-04 (Defendant's Exhibit 2) in his motion and compares the content within that bulletin with the item in the instant case for purposes of drawing distinctions. Nowhere in Agent Lopez's affidavit does he reference ATF Technical Bulletin 17-04 as an exclusive list of identifying an "auto switch" device. The Defendant continues by stating that the gold colored item seized in the instant case differed from those listed in the bulletin – as shown below, it is clear that the item seized is very similar to one or more of the images in the bulletin.

"Auto switch" seized from the Defendant (Government Exhibits 4 & 5)

 

Example of "auto switch" from ATF bulletin (Defendant's Exhibit 2)



      Furthermore, the Defendant fails to include in his motion the ultimate truth of the matter at hand – the device was indeed an "auto switch" and functioned as intended when tested by the ATF, that is, it allowed a semi-automatic firearm to fire as a fully automatic machinegun. This information was provided to the Defendant during discovery. The Defendant also fails to mention in his motion that he had already been found to be in possession of a firearm with an "auto switch" device attached which was seized when the warrant was executed. These facts indicate that not only was Agent Lopez in a position to affirmatively identify the item in

8

the parcel as an "auto switch" device, but a person with the same level of expertise as the Defendant would have been as well.

### *Offenses Alleged for Probable Cause in Affidavit*

The Defendant also argues that the affidavit for the warrant only lists two offenses for which probable cause could be determined. This is <u>untrue</u>. The affidavit lists, in two separate sections, five separate violations of law, including felon in possession of a firearm and possession of a machinegun, both of which the Defendant excludes from his argument for suppression. (Government Exhibit 1, pages 2 and 10). The Defendant apparently relies upon page 3, paragraph 5 of the affidavit, however fails to reference that the affidavit reads "amongst other herein described violations" in the paragraph.

In this case, Agent Lopez clearly established a reliable basis for the Magistrate Judge to determine that there was a fair probability that the Defendant's possession of the "auto switch" device would be evidence of his possession of contraband and also evidence of other crimes taking place. It reasons that someone who obtains an "auto switch" device has done so for the purpose to attaching it to a firearm. Agent Lopez was aware that the Defendant was a convicted felon and that the Defendant should not have been in possession of the "auto switch" itself or any firearm that an "auto switch" device can be attached to. Agent Lopez could not have been any more clear to the Magistrate Judge as to all of the offenses for which he believed probable cause would be established.

**Even if Agent Lopez was mistaken about whether the item within the parcel was an "auto switch" device (which was verified), the exclusionary rule should not apply because he was acting in good faith in his representations and his reliance upon the warrant**

The Defendant fails to make mention of the good faith exception in his motion, which would certainly apply in this case. It is well-established that "evidence obtained by law

enforcement officials acting in objectively reasonable, good-faith reliance upon a search warrant issued by a neutral magistrate is admissible, even if the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Craig*, 861 F.2d 818, (5th Cir.1988). "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984).

The Defendant's argument as to why suppression is appropriate is not predicated upon the affiant making a statement that was false in any manner, let along knowingly or recklessly false. The Defendant's argument reverts to focusing on the affiant not possessing some level of expertise. The Defendant also provides no authority for the Court to rely upon regarding his assertions about what could or could not constitute a reasonable belief about how a machinegun conversion device could be recognized. This is not the applicable legal standard.

Agent Lopez did not make a false statement concerning the "auto switch" device under any lens. The fact that Agent Lopez recognized the item in the parcel as an "auto switch" device and the subsequent firearms testing that proved that it was indeed a functioning "auto switch" device should be more than sufficient to dispel with any notion that he was not acting in good faith when he authored his affidavit. It reasons, given all of the facts known at the time, that Agent Lopez's reliance upon the search warrant was also in good faith.

**The August 14, 2019 search warrant affidavit established a link or nexus between the Defendant's actions of receiving an "auto switch" device in the mail and the utilization of computers and/or cellular phones**

After the search of the Defendant's residence was complete, Agent Lopez obtained a search warrant (Government Exhibit 2) on August 14, 2019 from United States Magistrate

Judge Frances H. Stacy. The search warrant authorized the search of two computers, two electronic storage cards and a cellular telephone that had been seized from the Defendant during the search of his residence.

The Defendant is correct in his assertion that an affidavit must establish a nexus between the place to be searched and the things to be seized. However, his argument fails to take into account the facts and circumstances cited in the affidavit. It also fails to take into account the affiant's specific basis of his knowledge that he includes in the affidavit. A review of the affidavit makes it clear that Agent Lopez establishes a link between the items he sought authority to search and the facts he details from his investigation.

The parcel containing the "auto switch" device was shipped to the Defendant at his residence. Agent Lopez cites in paragraph 8 of the affidavit that he knew that these types of items were purchased through online mediums such as e-commerce platforms like eBay and Wish.com. As such, a search of a computer, storage card or a cellular telephone capable of internet access may yield evidence of online activity linked to purchase history.

In paragraphs 14 through 16, Agent Lopez also discusses the type of documentation that firearms traffickers will utilize in their illegal activities and that these documents can be found on or utilized through computers and cellular phones. He further describes how payment is made for these transactions and how computers and cellular phones can be used to access these payment methods. As such, a search of a computer, storage card or cellular telephone may yield evidence of this information.

In paragraph 17, Agent Lopez details that those engaged in firearms trafficking often utilize cellular telephones for communications and other various reasons to further their trafficking activities. As such, a search of a cellular telephone may yield evidence of these

communications and activity.

As he did in the May 21, 2019 affidavit, Agent Lopez again gives the Magistrate Judge a firm basis for his knowledge on the facts cited in his affidavit. The Court will find in paragraphs 2 and 3 of the affidavit that Agent Lopez provides an overview of his knowledge. He also cites his training and experience and information received from other federal agents throughout the affidavit, giving further specific sources of his knowledge.

The Defendant's argument paints the affidavit as though it was bare in its' assertion and its' basis in fact. Given the facts cited in the affidavit, the affiant's sources of information and the specific knowledge that he provided the Magistrate Judge as to why he was searching these devices, it is clear that Agent Lopez established a nexus between searching these items and the information he sought to obtain.

**The August 13, 2019 search warrant was sufficiently particular in describing items to be searched for and the criminal violations for which evidence would be sought**

The Defendant argues that because the affidavit requests permission to search with a scope that included several locations and/or types of data to be sought that the warrant was too general and provided for an open-ended search. The Defendant indicates in his argument that the two violations that he was charged with should be the only legal scope with which federal agents should have been allowed to search with. The Defendant urges that suppression is the only imaginable cure in this scenario.

Attachment B of Government's Exhibit 2 lists several violations of law that it requests evidence to seek for. Furthermore, Attachment B does provide a list of specific items it seeks to search for – those specifically related to firearms transactions, evidence of attribution for the evidence and records of communication. It concludes by providing the Court with a

description of how the search and review of data would occur and fully informs the Court of how the affiant intended on carrying out the search.

When probable cause to search for evidence of a crime is established, the affiant has a duty to request authorization to search in any location where he/she has shown that evidence might be. As it relates to computer based evidence, as the Court is aware, evidence of crimes potentially involving communication or financial transactions can be located in any number of places. Latitude to conduct such a search should be provided to the affiant where he/she has shown the court a probability that evidence will be found if a thorough search is conducted. "Although officers should limit exposure to innocent files, for a computer search, 'in the end, there may be no practical substitute for actually looking in many (perhaps all) folders and sometimes at the documents contained within those folders.'" *United States v. Triplett*, 684 F.3d 500, (5th Cir. 2012).

In the instant case, that is what happened. Agent Lopez provided the Magistrate Judge with a factual basis to believe that there was fair probability that evidence of the listed crimes would be found within the items listed in Attachment A of the affidavit. As discussed herein, this was the legal standard he was required to meet and he did. To argue that Attachment B does not indicate Agent Lopez's efforts to limit the scope of the search he was requesting authorization to seize evidence from is to ignore the plain language used in Attachment B. Furthermore, it is not relevant to the analysis which crimes the Defendant was eventually charged with (after the searches had been concluded). The only matter of relevance is which crimes Agent Lopez provided facts to support a search in his affidavit.

Even if the Court believes that the authorization request of the August 14, 2019 search warrant does not meet the particularity requirement, as previously detailed herein, suppression

is not the appropriate remedy. There is no evidence that in relying upon the August 14, 2019 search warrant that Agent Lopez was not doing so in good faith. The details and limitations he provided to the Magistrate Judge and her subsequent review of said details and limitations is evidence that Agent Lopez was proceeding in good faith. The good-faith inquiry is confined "to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon,* 468 U.S. at 923 n. 23, 104 S.Ct. 3405. Because Agent Lopez was acting upon good faith reliance of the search warrant, suppression is not a remedy that should be taken into consideration by the Court in this case.

### III. CONCLUSION

For these reasons listed herein, the Government argues that both the May 21, 2019 and the August 14, 2019 search warrants were based upon factually established probable cause and therefore legally sufficient. Both warrants were also executed in good faith. The Government respectfully requests that the defendant's motion to suppress be denied in its entirety.

Respectfully submitted,

JENNIFER LOWERY
ACTING UNITED STATES ATTORNEY

*/s/ John M. Lewis*
John M. Lewis
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 31st day of May, 2021, I electronically filed this document with the Clerk of Court using CM/ECF and sent the same via e-mail to Paul Morgan, attorney for the Defendant.

                                          */s/ John M. Lewis*
                                          John M. Lewis
                                          Assistant United States Attorney